**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| TARA LEIGH PATRICK a/k/a CARMEN ELECTRA, CLAUDIA SAMPEDRO, JOANNA KRUPA, and RACHEL KOREN a/k/a RACHEL BERNSTEIN, | Civil Action No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| INTEGRATED CONSTRUCTION SERVICES2, LLC doing business as IMBIBE CIGAR BAR, and DOES 1 through 20, inclusive, | **(Jury Trial Demanded)** |
| Defendants. | |

Plaintiffs TARA LEIGH PATRICK a/k/a CARMEN ELECTRA; CLAUDIA SAMPEDRO; JOANNA KRUPA; and RACHEL KOREN a/k/a RACHEL BERNSTEIN (collectively, "Plaintiffs" or "Models"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants INTEGRATED CONSTRUCTION SERVICES2, LLC doing business as IMBIBE CIGAR BAR, and DOES 1 through 20 (collectively "Defendants"), respectfully allege as follows:

**BACKGROUND**

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, IMBIBE CIGAR BAR in Albuquerque, New Mexico.

2.      As detailed below, Defendants' theft and unauthorized use of Plaintiffs' images,

1

photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of each Plaintiff's common law right of privacy and publicity as pertains to Defendants' unreasonably placing of each of them in a false light before the public; d) violation of the New Mexico Unfair Trade Practices Act ("UPA"), NMSA 1978, § 57-12-3; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action were, professional models who reside throughout the United States.

6.      According to publicly available records, defendant INTEGRATED CONSTRUCTION SERVICES2, LLC is a limited liability company formed under the laws of the state of New Mexico, with its principal place of business located at 3101 Central Ave NE, Albuquerque, New Mexico.

7.      Venue is proper in the United States District Court for the District of New Mexico because Albuquerque, New Mexico is Defendants' principal place of business.

2

8.    A significant portion of the alleged causes of action arose and accrued in New Mexico and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Albuquerque, New Mexico.

## PARTIES

### *Plaintiffs*

9.    Plaintiff TARA LEIGH PATRICK a/k/a CARMEN ELECTRA ("Electra") is a well-known professional model, and a resident of Los Angeles County, California.

10.    Plaintiff CLAUDIA SAMPEDRO ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

11.    Plaintiff JOANNA KRUPA ("Krupa") is a well-known professional model, and a resident of Los Angeles County, California.

12.    Plaintiff RACHEL KOREN a/k/a RACHEL BERNSTEIN ("Koren") is a well-known professional model, and a resident of Los Angeles County, California.

### *Defendants*

13.    According to publicly available records, Defendant INTEGRATED CONSTRUCTION SERVICES2, LLC is formed under the laws of the state of New Mexico. During times relevant to this action, INTEGRATED CONSTRUCTION SERVICES2, LLC operated Imbibe Cigar Bar (hereinafter "Imbibe Cigar Bar" or "the Club") a night club located at 3101 Central Ave NE, Albuquerque, New Mexico.

14.    Imbibe Cigar Bar holds, and at all times relevant has held, itself out as an operator of a night club that engages in the business of entertaining its patrons with alcohol, fully nude dancing, and full friction.

15.    Imbibe Cigar Bar owns and/or operates social media accounts and websites, such

as https://www.instagram.com/imbibeabq/, and http://www.imbibenobhill.com/index_hours.html, through which it advertises its business, events, and parties. For many of these events, images of one or more of the models were used to market and promote the events.

16.     Upon information and belief, Imbibe Cigar Bar coordinated their promotional, Internet, and social media activities through active and dynamic use of their Facebook and Twitter accounts and website.

17.     Plaintiffs are unaware of the true names and capacities of Defendants named herein as unidentified DOES 1 through 20 (hereinafter referred to as "DOES"); and, therefore, sue such DOES by said fictitious names. Plaintiffs will seek leave of this Court to amend this Complaint when the true names of DOES 1 through 20 are ascertained. Plaintiffs, upon information and belief, allege that each of the DOES named by such a fictitious name is in some manner responsible for the acts and omissions as alleged herein; and, therefore, DOES are liable to Plaintiffs for the damages alleged herein.

18.     For purposes of this Complaint and for reasons set forth within this Complaint, hereinafter, all of the above-identified Defendants may be collectively referred to as "Defendants".

**FACTUAL ALLEGATIONS**

19.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines, and individuals for the purpose of advertising products and services.

20.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and

brands, for which they model.

21. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by the Defendants in order to make it appear that they worked at or endorsed Imbibe Cigar Bar.

22. In the case of every Plaintiff, such appearance was false.

23. Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images caused each Plaintiff to suffer substantial damages.

24. Further, in certain cases Defendants' misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

25. Electra is an actress, recording artist, author, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy, music, and theatre. Electra is one of Hollywood's most versatile personalities. She attended Cincinnati's School for Creative and Performing Arts. After graduating high school in 1991 Electra moved to Los Angeles and caught the eye of Prince, who produced her self-titled album on his Paisley Park record label. Electra ventured into acting with regular roles on Baywatch and MTV's Singled Out. She has since made the move to the big screen with starring roles in blockbuster hits including Scary Movie, Dirty Love, Cheaper by the Dozen 2, and Meet the Spartans. Electra attained the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. In 2006, Electra became a published author with the release of her book, "How to be Sexy." She also formed the

dance troupe, The Bombshells, who perform nationwide, and released the fitness DVD series, Carmen Electra's Aerobic Striptease. In 2009, Electra appeared on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, she starred in the film, Oy Vey, My Son is Gay and 2-Headed Shark Attack, alongside Charlie O'Connell, served as a guest judge on Britian's Got Talent, and made reoccurring guest appearances on CW's hit show, 90210. In November of 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first burst onto the Hollywood circuit. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart, the sultry songstress was on fire, turning up the heat for audiences, including The Wendy Williams Show, Cyndi Lauper's Home For The Holidays charity event, the notorious White Party in Palm Springs, and the Life Ball in Vienna. In June of 2014, Electra released 'Werq', which was followed by the release of the music video. She also released her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. In November 2015, Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Electra launched her perfume, "Carmen Electra", with FragranceNet. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has over 2.9 million Facebook followers, 1 million Instagram followers, and 364 thousand Twitter followers.[1]

26.    That we know of, on or about December 10, 2014, Electra's image, likeness, and/or identity are depicted in the photo in Exhibit "A" to promote Imbibe Cigar Bar on its Facebook page. This Image was intentionally altered to make it appear that Electra was either a worker at

---

[1]    In the world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model.

Imbibe Cigar Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

27.    Electra has never been employed at Imbibe Cigar Bar, has never been hired to endorse Imbibe Cigar Bar, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

28.    Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Sampedro has three children, and is married to former Green Bay's star defensive end Julius Peppers.

29.    That we know of, on or about April 14, 2015, Sampedro's image, likeness, and/or identity are depicted in the photo in Exhibit "B" to promote Imbibe Cigar Bar on its Facebook page. This Image was intentionally altered to make it appear that Sampedro was either a worker at Imbibe Cigar Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

30.    Sampedro has never been employed at Imbibe Cigar Bar, has never been hired to endorse Imbibe Cigar Bar, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31.    Krupa is, and at all times relevant to this action was, a Polish American model, actress, and dancer. She was named the "Sexiest Swimsuit Model in the World" and has appeared

on the cover of magazines such as *Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, Maxim*, and twice for *Playboy*. Krupa has also graced the covers of *South African GQ*, and the Polish editions of *Cosmopolitan, InStyle, Glamour*, and *Grazia*. Krupa was voted "Model of the Year" in Maxim's 2004-2005 German edition and was ranked #55 in Maxim's "Hot 100" 2011 edition and was voted "Model of the Year" in Maxim's 2004-2005 German edition. She has appeared on the cover of Playboy magazine twice, modeled for PETA, and founded an animal rescue group, Angels For Animal Rescue, with her friend Gabi Gutierrez. In addition, Krupa has appeared in "The Underground Comedy Movie" (1999) (2010 re-issue), "Planet of the Apes" (2001), "The Man Show" (2002–2003), the action film "Max Havoc: Curse of the Dragon," (2004), "Las Vegas" episode "Degas Away with It" (2004), "CSI: Crime Scene Investigation" episode "Kiss-Kiss, Bye-Bye" (2006), "The Dog Problem" (2006), "Scary Movie 4" (2006), "Ripple Effect" (2007), "Skinner Box" (2007),the television show "Superstars" (June 2009), and in Season 9 of "Dancing with the Stars." (2009), "Szymon Majewski Show" (Polish TV talk show) (2010), Krupa was a cast member for the reality TV show "The Real Housewives of Miami" (2012–2013), "Ridiculousness" (2014), and has been the host and head judge in Poland's "Next Top Model" since 2010.

32.    That we know of, on or about February 28, 2018, March 2, 2018, April 2, 2018, April 4, 2018, April 6, 2018, and April 13, 2018, Krupa's image, likeness, and/or identity are depicted in the photo in Exhibit "C" to promote Imbibe Cigar Bar on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Krupa was either a worker at Imbibe Cigar Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

33.    Krupa has never been employed at Imbibe Cigar Bar, has never been hired to

endorse Imbibe Cigar Bar, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.     Koren is an international model who has walked runways for fashion shows in Miami's Mercedes Benz Fashion Week, filmed for the Travel TV show "Bikini Destinations" all over the world, shot for major campaigns in Los Angeles, CA, and is the face of many brands. Koren appeared in a campaign for MIDORI with Kim Kardashian and in the movie "Date Night" with Steve Carell and Tina Fey. She also played the character of "Sue Emory" in an episode of "The Closer" where she can be seen doing her own stunts. She has been published in major campaigns and worked for companies such as Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, *Modern Salon Magazine*, No Fear, Axe Body Spray, Paul Mitchell, *Vibra Magazine, Launch Pad Magazine, Cut & Dry Magazine, Hairdo Magazine*, Sunset Tan, Divine Boutique, *Esquire Magazine, Vogue Magazine*, True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, *Rebel X Magazine*, SNI Swimwear, Tommy Bahama, Roma, J Valentine, Sunsets Inc, B Swim, Love Culture, Maxim, *Viva Glam Magazine*, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, *Swim Magazine*, American Honey, and Have Faith Swimwear.  She currently owns her own company, Cashmere Hair Extensions, which appeared on the show "Shark Tank" in 2013.

35.     That we know of, on or about November 10, 2015, Koren's image, likeness, and/or identity are depicted in the photo in Exhibit "D" to promote Imbibe Cigar Bar on its Facebook page. This Image was intentionally altered to make it appear that Koren was either a worker at Imbibe Cigar Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

36.     Koren has never been employed at Imbibe Cigar Bar, has never been hired to

endorse Imbibe Cigar Bar, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37.    Upon information and belief, Plaintiffs' images continued to be advertised on Imbibe Cigar Bar's social media platforms until it permanently closed in early 2020.

***Defendants' Business***

38.    Upon information and belief, Defendants operated, during the relevant time period, Imbibe Cigar Bar where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

39.    Upon information and belief, and in furtherance of Imbibe Cigar Bar's promotion, Defendants own, operate and control Imbibe Cigar Bar's social media accounts, including its Facebook, Twitter, and Instagram accounts.

40.    Defendants used Imbibe Cigar Bar's Facebook, Twitter, and Instagram accounts to promote Imbibe Cigar Bar, and to attract patrons thereto.

41.    Defendants did this for their own commercial and financial benefit.

42.    Defendants used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a worker at Imbibe Cigar Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

43.    Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Imbibe Cigar Bar to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

10

44.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Imbibe Cigar Bar and at no point have any of the Plaintiffs ever endorsed Imbibe Cigar Bar, or otherwise been affiliated or associated with Imbibe Cigar Bar.

45.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

46.     As such, Plaintiffs never received any benefit from Defendants' use of their Images.

**Standard Business Practices in the Modeling Industry**

47.      It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

48.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (e.g., company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

**Defendants' Misappropriation of Plaintiffs' Images**

49.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Imbibe Cigar Bar by and through various marketing and promotional mediums

including, without limitation, Imbibe Cigar Bar's website, Twitter, Facebook, and Instagram.

50.    Defendants showcased Plaintiffs' Images on Imbibe Cigar Bar's social media pages to create the false impression that Plaintiffs worked at Imbibe Cigar Bar, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

51.    Defendants did so to attract clientele to Imbibe Cigar Bar, promote Imbibe Cigar Bar, and thereby generate revenue for Defendants.

52.    Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Imbibe Cigar Bar.

53.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

54.    In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

55.    This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendants' use of Plaintiffs' Images is that they are workers, endorse a night club, or are otherwise associated or affiliated with a night club.

56.    At no point were any of the Plaintiffs ever affiliated with Imbibe Cigar Bar, or Defendants.

57.    Each of Plaintiffs' Images was used without her consent.

58.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

59.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

60.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Imbibe Cigar Bar's website, Twitter, Facebook, or Instagram accounts.

61.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

62.     By using the Models' image and likeness, Defendants did not use their own advertising idea, and instead used the Models' (or their licensees') advertising ideas to promote their club to the public.

63.     Defendants misleadingly, falsely and/or deceptively advertised to the public at large, and to Plaintiffs, as consumers, when Defendants advertised Plaintiffs' Images in their social media platforms to attract patrons to Imbibe Cigar Bar, and this misleadingly, deceitful, and/or false advertising deceived or misled the public.

64.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

65.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

66.     The provisions of the Lanham Act, 215 U.S.C. §1125, et seq. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

67.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Imbibe Cigar Bar, or agreed to appear in Imbibe Cigar Bar advertisements.

68.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

69.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Imbibe Cigar Bar.

70. Insofar as Defendants published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

71. Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

72. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

73. Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

74. Furthermore, upon information and belief, Plaintiffs allege that the use of their image and likeness was continuing and ongoing in that it is still viewable on Defendants' social media pages.

75. Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs were damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

<u>**SECOND CAUSE OF ACTION**</u>
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)**

76. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

77. The provisions of the Lanham Act, 215 U.S.C. §1125, et seq. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

78. Defendants used Plaintiffs Images in order, inter alia, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Imbibe Cigar Bar, or worked at, sponsored, or approved of Imbibe Cigar Bar's goods, services or commercial activities.

79. This was done to promote and attract clientele to Imbibe Cigar Bar, and thereby generate revenue for the Defendants.

80.    Thus, this was done in furtherance of Defendants' commercial benefit.

81.    Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Imbibe Cigar Bar, nor worked at, sponsored, or approved of Imbibe Cigar Bar's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Imbibe Cigar Bar.

82.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

83.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

84.    Furthermore, upon information and belief, Plaintiffs allege that the use of their image and likeness was continuing and ongoing in that it is still viewable on Defendants' social media pages.

85.    Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs were damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Right of Privacy: Appropriation of Likeness)

86.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

87.    As set forth hereon, Defendants violated each Plaintiffs' common law right to privacy under New Mexico.

88.    Defendants did so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

89.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Imbibe Cigar Bar's website or related social media accounts

as part of Defendants' advertising campaign.

90.     At all relevant times, the Imbibe Cigar Bar's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

91.     Imbibe Cigar Bar's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

92.     Upon information and belief, Plaintiffs allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

93.     Furthermore, upon information and belief, Plaintiffs allege that discovery will prove that Defendants republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

94.     Upon information and belief, Plaintiffs allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

95.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Imbibe Cigar Bar.

96.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

97.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

98.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

99.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

100.     Furthermore, upon information and belief, Plaintiffs allege that the use of their

16

image and likeness was continuing and ongoing in that it is still viewable on Defendants'
social media pages.

## FOURTH CAUSE OF ACTION
### (Right of Privacy: False Light)

101.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the
preceding paragraphs as if fully set forth hereon.

102.   As set forth hereon, Defendants violated each Plaintiff's common law right to
privacy under New Mexico law.

103.   Defendants did so by appropriating each Plaintiff's likeness for commercial
purposes without authority or consent and then portraying each Plaintiff in a false light in Imbibe
Cigar Bar's advertisements.

104.   Upon information and belief, Plaintiffs allege that the manner in which Defendants
posted and publicized their image and likeness in a manner that was hidden, inherently
undiscoverable, or inherently unknowable, in that Defendants published their image and likeness
on social media threads that, over time, are (for example, but not limited to) "pushed" down in
time from immediate visibility.

105.   Plaintiffs are further informed and believe and hereon allege that discovery will
prove that Defendants republicized Plaintiff's image and likeness on various occasions, via
different mediums, after the initial date of the posting of their image and likeness and through the
filing of this complaint.

106.   Upon information and belief, Plaintiffs allege that Defendants' republication of
Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different
product.

107.   Specifically, Defendants invaded and violated Plaintiffs' privacy and portrayed
them in a false light by creating the false impression with the consumers that Plaintiffs were either
workers at Imbibe Cigar Bar, endorsed same, were affiliated, associated, or otherwise connected
with same, or had agreed to promote same.

108.   Affiliation with a night club could lead to significant potential career and personal

damage to a professional model because it could lead other clients to refuse to work with her or drop her as a model.

109.    At all relevant times, the Imbibe Cigar Bar's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

110.    Imbibe Cigar Bar's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

111.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Imbibe Cigar Bar.

112.    At no point did any Defendants ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

113.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

114.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

115.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

116.    Furthermore, upon information and belief, Plaintiffs allege that the use of their image and likeness was continuing and ongoing in that it is still viewable on Defendants' social media pages.

### **FIFTH CAUSE OF ACTION**
### **(UPA)**

117.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

118.    As set forth hereon, Defendants violated the UPA.

119.    Defendants made a false or misleading statement or representation when it advertised Plaintiffs' Images on their social media platforms because Defendants portrayed Plaintiffs as either workers or their employees.

120.    Defendants knowingly made this false or misleading statement or representation in connection with the sale of the services provided by Imbibe Cigar Bar.

121.    Defendants' false or misleading representation occurred in the regular course of Defendants' trade or commerce because it expected to attract patrons based on this false or misleading statement or representation.

122.    Defendants' false or misleading representation was of the type that may, tends to, or does deceive or mislead any person because any person would believe that the advertisement of Plaintiffs' Images would mean that Plaintiffs are workers or employees of Imbibe Cigar Bar.

123.    Furthermore, upon information and belief, Plaintiffs allege that the use of their image and likeness was continuing and ongoing in that it is still viewable on Defendants' social media pages.

124.    Thus, Defendants violated the UPA.

## SIXTH CAUSE OF ACTION
### (Defamation)

125.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

126.    As detailed throughout this Complaint, Defendants published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

127.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

128.    None of these representations were true.

129.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were workers at the Club, or endorsed the Club.

130.     Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

131.     In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

132.     Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

133.     Defendants' publication of Plaintiffs' Images constitutes defamation under New Mexico law because said publication falsely accuses Plaintiff of having acted in a manner – i.e., working and/or endorsing a night club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

134.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under New Mexico law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

135.     This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional worker and/or promoting as night club, an inference which Defendants' publication of the Images support.

136.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under New Mexico law because, insofar as said publication falsely portrays each of the Plaintiffs as a worker, it imputes unchastity to her.

137.     Furthermore, upon information and belief, Plaintiffs allege that the use of their

image and likeness was continuing and ongoing in that it is still viewable on Defendants' social media pages.

138.    Defendants' publication of Plaintiffs' Image caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SEVENTH CAUSE OF ACTION
### (Negligence and Respondeat Superior)

139.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

140.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

141.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

142.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

143.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

144.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

145.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these

policies, along with Federal and New Mexico law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

146.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading, and/or deceptive manner.

147.    Furthermore, upon information and belief, Plaintiffs allege that the use of their image and likeness was continuing and ongoing in that it is still viewable on Defendants' social media pages.

148.    As a result of Defendants' negligence, Plaintiffs suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

149.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

150.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

151.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

152.    Furthermore, upon information and belief, Plaintiffs allege that the use of their image and likeness was continuing and ongoing in that it is still viewable on Defendants' social media pages.

153.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

154.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Club to the general public and potential clientele.

156.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either workers at the Club or endorsed the Club.

157.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

158.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

159.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Club.

160.    Plaintiffs were not compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

161.    Furthermore, upon information and belief, Plaintiffs allege that the use of their image and likeness was continuing and ongoing in that it is still viewable on Defendants' social media pages.

162.    As such, Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

163.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

164.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

165.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

166.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants did not compensate

Plaintiffs.

167.    Furthermore, upon information and belief, Plaintiffs allege that the use of their image and likeness was continuing and ongoing in that it is still viewable on Defendants' social media pages.

168.    Plaintiff is therefore entitled to reasonable compensation for the Club's unauthorized use of their Images.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs demand a trial by jury.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)    For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b)    For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c)    For punitive damages, in an amount to be determined at trial, pursuant to UPA, § 57-12-10(D);

(d)    For all attorneys' fees and costs incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and pursuant to UPA, § 57-12-10(C);

(e)    For such other and further relief as the Court may deem just and proper.

Dated: June 10, 2021                         Respectfully Submitted,

                                             /s/ *Nicholas T. Hart*
                                             Nicholas T. Hart
                                             nick@harrisonhartlaw.com
                                             Carter B. Harrison, IV
                                             carter@harrisonhartlaw.com
                                             Ramón A. Soto
                                             ramon@harrisonhartlaw.com
                                             **HARRISON & HART, LLC**

**ATTORNEYS AND COUNSELORS AT LAW**
924 Park Avenue Southwest, Suite E
Albuquerque, New Mexico 87102
Telephone: (505) 295-3261
Facsimile: (505) 341-9340
*Attorneys for Plaintiffs*